1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

DENA SOLT, an individual,

10

Plaintiff,

11

v.

12

13   CSA AMERICA TESTING &
      CERTIFICATION LLC, d/b/a CSA GROUP,
14   a foreign limited liability company, *et al.*,

15

Defendant.

16

Case No. 2:24-cv-00112-RSM

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

17         This matter comes before the Court on Defendant CSA America Testing & Certification

18   ("CSA")'s Motion for Summary Judgment, Dkt. #71.  Plaintiff Dena Solt has filed an opposition

19   brief.  Dkt. #85.  Neither party has requested oral argument.  For the reasons below, the Court

20   GRANTS CSA's Motion.

21

22         Plaintiff Solt worked for Defendant CSA from 2019 until her termination in April of

23   2023.  She alleges wage claims for overtime and unpaid meal periods and rest breaks, breach of

24   contract, promissory estoppel, a hostile work environment, sex and age discrimination in

25   violation of RCW 49.60.180, and retaliation.  *See* Dkt. #29.

26

27         Summary judgment is appropriate where "the movant shows that there is no genuine

28   dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 1

R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Material facts are those which might affect the outcome of the suit under governing law. *Anderson*, 477 U.S. at 248. In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (citing *Federal Deposit Ins. Corp. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992)).

On a motion for summary judgment, the court views the evidence and draws all reasonable inferences in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255; *Sullivan v. U.S. Dep't of the Navy*, 365 F.3d 827, 832 (9th Cir. 2004). However, the nonmoving party must make a "sufficient showing on an essential element of her case with respect to which she has the burden of proof" to survive summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 251.

The Court will address each claim below.

### A. Overtime Claim and Administrative Exemption

The Fair Labor Standards Act ("FLSA") deals with overtime and minimum wage requirements for employees. 29 U.S.C. §§ 201–219. Washington's Minimum Wage Requirements and Labor Standards, formerly known as the Minimum Wage Act ("MWA"), is based upon the FLSA, and federal authority under the FLSA often provides helpful guidance. *Drinkwitz v. Alliant Techsystems, Inc.*, 140 Wn.2d 291, 298, 996 P.2d 582, 586 (2000). "The FLSA requires employers to pay overtime to covered employees who work more than 40 hours in a week." *Encino Motorcars, LLC v. Navarro*, 584 U.S. 79, 81 (2018) (citing 29 U.S.C. §

207(a)). However, the FLSA exempts from overtime pay "any employee employed in a bona fide

executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1).

An employee qualifying for the administrative exemption must (1) be compensated not

less than $455 per week; (2) perform as her primary duty "office or non-manual work related to

the management or general business operations of the employer or the employer's customers;"

and (3) have as her primary duty "the exercise of discretion and independent judgment with

respect to matters of significance." *McKeen-Chaplin v. Provident Sav. Bank*, FSB, 862 F.3d 847,

850-51 (9th Cir. 2017) (citing 29 C.F.R. § 541.200(a)). "These three conditions are explicit

prerequisites to exemption, not merely suggested guidelines." *Id*. at 851. The defendant bears

the burden of proving the exemption applies. *Id.* The "question of how an employee spends his

or her workday is one of fact, while the question of whether his or her activities exclude him or

her from the overtime-pay requirement is one of law." *Christopher v. SmithKline Beecham Corp*.,

635 F.3d 383, 391 (9th Cir. 2011).

CSA paid Solt an annual salary of $135,000 as a Certifier III, which increased to $141,075

upon her promotion to Certification Specialist in January 2021. Dkt. #79 ("KC Fletcher Decl."),

¶ 3; Dkt. #115 at 2. Solt was paid on a biweekly basis. Dkt. #82, Ex. 2, ("Solt Dep.") at 245:12-

17. The amount of compensation received by Plaintiff at all relevant times exceeded the $455

per week threshold, thus satisfying the first prong.

The parties dispute whether Solt's primary duties were directly related to the management

or general business operations of CSA or its customers. To meet this requirement, the employee

"must perform work directly related to assisting with the running or servicing of the business, as

distinguished, for example, from working on a manufacturing production line or selling a product

in a retail or service establishment." 29 C.F.R. 541.201(a). "Work directly related to management

or general business operations includes, but is not limited to, work in functional areas such as tax; finance; accounting; budgeting; auditing; insurance; quality control; purchasing; procurement; advertising; marketing; research; safety and health; personnel management; human resources; employee benefits; labor relations; public relations, government relations; computer network, internet and database administration; legal and regulatory compliance; and similar activities." 29 C.F.R. 541.201(b).

CSA cites to the job description for Certifier III, which states the primary function of the role is to "provid[e] certification services," which requires the "interpretation of standards, processes and procedures, as well as providing technical guidance; analysis; product testing information; compliance and maintenance recommendations; technical reviews and independent checks." Dkt. #79-1 at 2. The Certification Specialist job description expands on these duties by adding that the employee will "make[] technical decisions based on a high degree of knowledge, training and professional experience to maintain the integrity of CSA's global certification programs." Dkt. #79-2 at 2. CSA then lists Solt's responsibilities described by her supervisor. *See* Dkt. #71 at 10-11. According to her supervisor, Solt:

- Interviewed candidates and provided feedback based on interviews. Dkt. #73-1, ("KC Fletcher Dep."), 218:14-16.

- Contributed to the development and "continuous improvement of [CSA's] service." *Id*. at 219:16-19.

- Drafted quality documents and suggested policy changes. *Id*. at 220:1-11.

- Evaluated product functionality to determine any modifications needed for the project specific tracking sheet. *Id*. at 222:2-19.

- As the senior member of the ELD ("Electronic Logging Device") program, influenced its operations. *Id*. at 223:16-20.

- Designed and modified testing procedures for efficiency. *Id*. at 224:1-3, 225:11-18. Her recommendations were provided to the PTL for publishing. *Id.* at 225:22-226:2.

- Created systems for storing project data, such as screen snaps, reports, and other items generated by the ELD. *Id*. at 229:8-11.

- Was able to modify or deviate from testing procedures with PTL approval. *Id*. at 232:11-17.

- Informed customers of non-compliance issues. *Id*. at 231:21-232:4.

- Coordinated with internal teams, including CSA's Technical Management Team, salespeople, and the commercial unit, to ensure departments were aligned; outside regulators to determine expectations; and customers regarding projects. KC Fletcher Decl. at ¶¶ 15-16.

- Was qualified to, and did make, final decisions on whether a product should be certified or not. *Id*. at ¶17.

- Independently identified issues and developed solutions before consulting her supervisor with proposed solutions. *Id*. at ¶20.

Solt does not dispute that she performed office work, but she argues that her work was not directly related to the management policies or general business operations of CSA or CSA's customers. Dkt. #86, ("Solt Decl. II"), ¶29. Solt contends that her "primary" duty was *solely* to "take test results received from ELD testers and indicate whether that test result passed or failed Transport Canada's mandatory thresholds." Dkt. #85 at 13.

The following facts are undisputed. Solt performed certification services of ELDs, which required her to review ELD test results and compare the results to regulatory standards to determine whether the device complied. Dkt. #85 at 3. Solt conducted three interviews of job candidates for CSA and provided her feedback of said candidates. Solt Decl. II at ¶ 22. Solt informed customers whether an ELD passed certification. Dkt. #72, ("Solt Decl."), ¶ 24. Solt advised management on issues within the ELD program concerning testing and certification process. Solt Decl. II at ¶¶ 25, 28-29. Solt made recommendations to the PTL. Solt Dep. at 305:25-306:2. Solt conducted technical reviews to ensure that CSA quality procedures were followed. Solt Decl. II at ¶ 23. Solt assisted in developing a spreadsheet to make ELD testing easier. Dkt. #85 at 14; KC Fletcher Dep. at 105:20-106:5. Finally, Solt participated in the process for CSA to become accredited to certify ELDs, which included being interviewed by the Standards Council of Canada, sitting in on discussions on developing the ELD testing and certification program, and providing input and recommendations on the development of the program. Solt Decl. at ¶ 18.

Solt acknowledges that she performed some administrative duties, however, she argues that those duties were "fringe or infrequent tasks" and were not her "primary responsibility." Dkt. #118 at 2. Solt seems to interpret the language "primary duty" to exclusively mean one specific task that an employee performs the majority of their time. *See* Dkt. #85. at 14–15 ("Solt spent the overwhelming majority – at least 70% – of her time assigning pass/fail designations to ELD test results, while other tasks directly related to the business operations of CSA were few and far between."); ("Solt's primary duty was only to assign a pass/fail designation to test results received from ELD testers"). The regulations do not define "primary duty" so narrowly. WAC 296-128-505(1)(b) reads:

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 6

"The amount of time spent performing *exempt work* can be a useful guide in determining whether *exempt work* is the primary duty of an employee. Employees who spend more than fifty percent of their time performing *exempt work* will generally satisfy the primary duty requirement. Employees who do not spend more than fifty percent of their time performing *exempt duties* may meet the primary duty requirement if the other factors support such a conclusion."

An administrative employee's "primary duty" does not consist of one specific task but rather the performance of "exempt work" or "exempt duties." Therefore, Solt's attempt of rejecting administrative duties as part of her primary duty simply because she spends the majority of her time interpreting ELD test results is not dispositive.

Solt asserts that because she performed certification services that CSA offered to its customers, her primary duty concerned "production" and not "administrative" tasks. Dkt. #70 at 13. The Court finds this argument unpersuasive.

The administrative/production dichotomy distinguishes between work related to the goods and services which constitute the business marketplace offerings and work that contributes to "running the business itself." *Mckeen-Chaplin v. Provident Sav. Bank, FSB*, 862 F.3d 847, 851 (9th Cir. 2017). Solt cites to *Bothell* to support this proposition, however, *Bothell* demonstrates that this dichotomy is not generally applicable and is worth employing "only to the extent it clarifies the analysis." *Bothell v. Phase Metrics, Inc.*, 299 F.3d 1120, 1127 (9th Cir. 2002). Most importantly, although *Bothell* discusses the dichotomy, the Ninth Circuit ultimately did not use it in deciding whether Bothell was exempt. The Ninth Circuit rejected the district court's misapplication of the dichotomy and instead considered the nature of Bothell's employment duties. *Id.* at 1127. Notably, the *Bothell* decision states "[i]ndeed, some cases analyze the primary duty test without referencing the dichotomy at all" and that this is appropriate because "the dichotomy is but one analytical tool, to be used only to the extent it clarifies the analysis." *Id.*

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 7

Further, "[o]nly when work falls 'squarely on the "production" side of the line,' has the dichotomy been determinative." *Id.* at 1127.

The Court finds that Solt's primary duty – providing certification services – was "directly related to the management or business operations of the employer *or the employer's customers*." WAC 296-128-520(1)(a) (emphasis added).  CSA's customers were not in the business of providing certifications services.  Instead, they sold products that required certification in order to reach the market.  KC Fletcher Decl. at ¶¶4-5.  Employees do not fall outside the administrative exemption simply because they provide the service their company is hired to provide. *Heffelfinger v. Elec. Data Sys. Corp.*, 580 F. Supp. 2d 933, 956 (C.D. Cal. 2008), *aff'd in part, rev'd in part*, 492 F. App'x 710 (9th Cir. 2012); *see also Webster v. Public School Employees of Washington, Inc.*, 247 F.3d 910, 916 (2001) (noting that a "sensible application of the administrative work/production dichotomy" supported a finding that a labor union field representative, who assisted bargaining units that were his employer's clients negotiate collective bargaining agreements, was engaged in administrative work because "the purpose of the dichotomy is to clarify the meaning of 'work directly related to the management policies or general business operations,' not to frustrate the purpose and spirit of the entire exemption"). Accordingly, the Court finds her position does not fall squarely on the production side of the line.

Solt cites to only one case to support the assertion that her role was not directly related to the management or general business operations of CSA or its customers.  Solt claims her primary duty was similar to Bothell's, where his role entailed installation, troubleshooting, and maintaining equipment.  Dkt. #70 at 13 ("Solt spent her time much like Bothell did. . ."); *Bothell*, 299 F.3d at 1128.  However, these primary duties are easily distinguishable from Solt's as based on her own testimony.  Solt was not a repairman, nor did she perform manual work.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 8

Next, throughout her brief, Solt repeatedly asserts that a specific duty is not "directly related to management or general business operations" and cites to 29 CFR §541.201(b) to support that assertion. This regulation provides a list of duties that are "directly related to management or general business operations," however, it is not exhaustive as made evident by the language "but is not limited to" and "similar activities." *Id.* Moreover, the regulation does list similar duties that Solt performed such as auditing, quality control, and regulatory compliance. 29 CFR §541.201(b). Accordingly, Solt's attempt to reject the characterization of duties simply because they are not explicitly listed within 29 CFR §541.201(b) is unpersuasive.

Next, CSA must show that there is no genuine dispute of material fact that Solt's primary duty "includes the exercise of discretion and independent judgment with respect to matters of significance." WAC 296-128-520(1)(b). Exercising discretion and independent judgment "involv[es] the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered." WAC 296-128-520(3)(b). This implies that the employee has the authority to make an independent choice, free from immediate direction or supervision. *Id.* However, employees can exercise discretion and independent judgment even if their decisions or recommendations are reviewed at a higher level. *Id.* The decisions made as a result of the exercise of discretion and independent judgment may consist of recommendations for action rather than the actual taking of action. 29 C.F.R. §541.202(c). The fact that an employee's decision may be subject to review and that, upon occasion, the decisions are revised or reversed after review does not mean that the employee is not exercising discretion and independent judgment. *Id.* Exemptions are not available for employees who simply apply "well-established techniques, procedures or specific standards described in manuals or other sources." WAC 296-128-520(3)(b). Lastly, the exercise of

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 9

discretion and independent judgment does not include clerical or secretarial work, recording or tabulating data, or performing other mechanical, repetitive, recurrent or routine work. *Id.*

CSA argues that, as a matter of law, Solt's primary duties included the exercise of discretion and independent judgment with respect to matters of significance. CSA argues that Solt qualifies as an administrative employee, based on similarities between Solt's primary duties and those of *Williams-Bell*, where the Northern District Court of Illinois upheld the exempt status. *Williams-Bell v. Brit. Standards Inst., Inc.*, 532 F. Supp. 3d 640 (N.D. Ill. 2021).

In *Williams-Bell*, the plaintiff conducted certification audits for her employer's clients. To perform these audits, Williams-Bell was obligated to follow the structures and procedures within the employer's manual. 532 F. Supp. 3d at 644. Because of this, Williams-Bell argued that she did not exercise discretion and independent judgment because she did nothing more than "follow [her employer's] strict, step-by-step policies from start to finish." *Id.* at 649. However, the district court stated that obligation to follow a framework in an employer's manual did not preclude one from such discretion and judgment. *Id.* at 650. The court held that the factual record showed Williams-Bell was able to exercise discretion and independent judgment before, during, and after her audits while still adhering to the guidelines in the employer's manual. *Id.*

Similar proclamations have been made in the Seventh and Fifth circuit courts. *See Kennedy v. Commonwealth Edison Co.*, 410 F.3d 365, 374-75 (7th Cir. 2005) (that employee must follow "a highly regimented set of rules" does not prevent employee from exercising discretion and independent judgment*); Owsley v. San Antonio Indep. Sch. Dist.*, 187 F.3d 521, 526 (5th Cir. 1999) (existence of standard procedures and guidelines does not mean employee's responsibilities do not require exercise of independent discretion).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 10

1

2       According to Solt, her primary duty – interpreting ELD test results and comparing them

3   to the standards of Transport Canada's standards – was simply her applying established

4   techniques and procedures.  Solt claims that she could not modify or deviate from these standards

5   without approval from the PTL.  Dkt. #85 at 14.  Evidence in the record appears to conflict with

6   this assertion.  Solt states that at times she and the other certifiers would be inconsistent with how

7   they would handle certain challenges.  *See* Solt Dep. at 308:11-16. ("Hey, here's a challenge.

8   Would this work? How about we do this? … 'Hey, you know, this is how John's been doing it,

9   this is how Allen's been doing it. This is how Dena's been doing it.'" and "The three of us would

10  talk. 'Hey, ... what do we do here so it's consistent?'").

11

12      Next, Solt claims that interpreting whether a test result passed or failed was mainly

13  quantitative, such as whether a test result indicated that a warning icon appeared on the dashboard.

14  Dkt. #85 at 13.  Because the decisions were largely binary – the light appeared/did not appear –

15  she claims she was not exercising discretion.  However, the next portion of that deposition states

16  "there were a handful that required some amount of qualitative evaluation." KC Fletcher Dep. at

17  78:24-79:1.  Further, when questioned on whether she made recommendations and suggestions,

18  Solt responded, "All of us would ask questions and/or make a suggestion or whatever . . .

19  Sometimes . . . all three of us together [would say] 'Hey, we're experiencing this problem,'

20  because there were a lot of challenges with this stuff."  Solt Dep. at 340:16-22.

21

22      Next, Solt claims her recommendations and feedback to management were routinely

23  ignored.  For example, Solt interviewed potential candidates for ELD positions and provided

24  recommendations, however she claims her recommendations were not followed.  Dkt. #85 at 13.

25  Solt suggested improvements to the certification process, but she was told "not to fix" the issue.

26  KC Fletcher Dep. at 219:16-20.

27

28

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 11

Viewing the evidence and drawing all reasonable inferences in the light most favorable to the non-moving party, the Court finds that no genuine dispute of material fact precludes a determination as a matter of law that Solt's primary duty included the exercise of discretion and independent judgment with respect to matters of significance. This is based on Solt's own deposition testimony characterizing her job. Given all of the above, the administrative exemption applies and the Court grants CSA's motion for summary judgment on this claim.

**B. Related Wage Claims**

Because the Court concludes that Solt is subject to the administrative exemption, her related wage claims fail. CSA was not obligated to pay for meal periods, rest breaks, or travel time. *See* WAC § 296-126-002; Dkt. #71 at 13–14.

**C. Paid Leave**

Solt alleges that "Defendants CSA America Testing and CSA Group were obligated to track and report accrual and usage of paid leave and did not accurately do so" and that she "worked and was deducted for paid leave for the same time." Dkt. #29 at 19. CSA characterizes Solt's deposition testimony as stating that she was obligated to finish assignments by deadlines and chose to work from home on days that she had taken paid leave. *See* Dkt. #71 at 14–15. In response, Solt argues that she was terminated in part for complaining about paid leave practices, but this is more properly dealt with in the retaliation section below. Dkt. #85 at 16–17. She argues that CSA failed to track and report her paid leave but does not provide specifics. *Id*. The Court finds that this claim is properly dismissed on summary judgment.

**D. Actionable Deductions**

CSA states that on March 15, 2024, CSA offered to reimburse Solt the $83.36 that was improperly deducted from a health savings account. Dkt. #116, Ex. D at 2-3. This $83.36 was

identified in initial disclosures as the amount at issue. *See* Dkt. #116-3 at 8. CSA states that Solt has never responded to the offer, which still stands ,and that the claim is not actionable. Plaintiff asserts that this offer does not cure the conduct and that summary judgment is improper. Dkt. #85 at 17.

Plaintiff's opposition fails to adequately articulate a remaining dispute. If one does exist, it is over less than a hundred dollars. The Court assumes that CSA will honor its offer to reimburse this amount. Accordingly, this claim will be dismissed as moot.

**E.  Breach of Contract**

The Amended Complaint alleges that CSA "made enforceable promises to Ms. Solt that they did not perform, including pay, overtime pay, training, reimbursement for travel expenses, and promises of compensatory paid leave instead of overtime pay." Dkt. #29 at 20. CSA argues that this claim is "nebulous," that she was properly classified as exempt, and that it paid her properly for overtime and other expenses according to its own policies. Dkt. #71 at 15–16.

Under Washington law, an employer can pay overtime to exempt employees without waiving their exemption status. RCW § 49.46.130(2)(a) ("The payment of compensation or provision of compensatory time off in addition to a salary shall not be a factor in determining whether a person is exempted under RCW 49.46.010(3)(c)"); *see also Drinkwitz v. Alliant Techsystems, Inc.*, 140 Wn.2d 291, 303, 996 P.2d 582, 588 (2000) ("paid overtime or comp time for work in excess of forty hours per week cannot be considered as a factor in determining whether an employee is 'exempt.'").

In her opposition brief, Solt argues in a few terse sentences, without citation to the record, that she failed to get paid for agreed-upon overtime. Dkt. #85 at 17 ("In April 2023, CSA promised Solt that she would receive time and a half pay hours worked during a period of

increased business demand. Solt worked those hours. CSA did not pay her."). Earlier in the opposition brief, Solt contends that she did not receive promised overtime pay in December 2022 and April 2023, with citations to specific emails. *Id.* at 8–9. She does not respond to CSA's arguments about the difference between her manager *planning* to offer overtime versus her personally being *approved* for overtime. *See* Dkt. #71 at 16. CSA points out in its Reply that Solt's initial disclosures show she did receive at least some overtime pay in December 2022 and April 2023. Dkt. # 115 at 10 (citing Dkt. #116-3).

Solt contends that she did not get paid an estimated $1,500 in travel expenses despite CSA's policies allowing for reimbursement. Dkt. #85 at 17–18. She also says she was instructed not to submit those claims. CSA argues that it was not bound by its own policies to approve every travel expense, that the record shows these expenses were not approved, and that in any event Solt submits no receipts to prove these expenses. *See* Dkt. #115 at 10.

Finally, Solt maintains in her opposition that:

> Solt was promised support to attain her Certified Information System Security Professional (CISSP) license as well as continuing education to maintain her cybersecurity certificate, yet CSA failed to fulfill this obligation. Solt Decl. at ¶ 40. CSA made this promise to Solt on her hiring, an attractive promise to Solt as she sought to maintain and improve her cybersecurity credentialing. *Id.* at ¶ 38.

Dkt. #85 at 18. On reply, CSA argues:

> Solt again does not identify any document where the promise of "supporting" her pursuit of her Certified Information System Security Professional (CISSP) license was offered. Only by scouring her declaration will the Court find that Solt maintains an "oral promise" was made on an unspecified date during the recruiting process. Solt Dec. ¶ 38. Additionally, her reference to her Development Dialogue does not make her claim actionable. In the Dialogue, she describes obtaining the licensure as her "goal," and that it is "important to me" to receive the certification. *Id.* at Ex. 7. Nowhere does she cite to any document where such a promise was made and, in fact, she concedes that approval of the support was a

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 14

decision within management's discretion. *Id*. ("Assuming it is supported by management..."). Indeed, because the alleged promise was oral, her claim would be time-barred, as it was made "during the recruitment process" in 2019, more than three years before she filed her Complaint. *See* RCW 4.16.080(3) (three-year statute of limitations for non-written contracts).

Dkt. #115 at 11.

The Court has thoroughly reviewed the briefing and the cited exhibits for this contract claim and agrees with CSA that there are no genuine disputes of material fact here and that Plaintiff Solt has failed to set forth a valid claim. Her initial disclosures show she received overtime pay in December 2022 and April 2023, and she does not make a sufficient showing of breach as to specific terms of a contract related to overtime. She fails to make a sufficient showing that she incurred travel expenses that CSA agreed to reimburse. She fails to make a sufficient showing of an actionable claim for "support" for CISSP training. Without such, the Court is left with the impression that CSA's actions disappointed Solt but did not breach any contract between the parties. This claim is properly dismissed on summary judgment.

## F. Promissory Estoppel

The Amended Complaint alleges that CSA "made specific promises to Ms. Solt that they did not perform, including overtime pay, training, reimbursement for travel expenses, and promises of compensatory paid leave instead of overtime pay." Dkt. #29 at 20.

A promissory estoppel claim requires three elements: 1) that statements amounted to "promises of specific treatment in specific situations"; 2) that Plaintiff "justifiably relied on any of these promises"; and 3) that those promises were breached. *Bulman v. Safeway, Inc.*, 144 Wn.2d 335, 27 P.3d 1172, 1174-75 (2001).

CSA argues Solt fails the first two elements. CSA asserts that the overtime policy clearly states that all overtime must be approved by a supervisor and that it was not guaranteed. Dkt. #71

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 15

at 17 (citing Dkt. #81-3).  Likewise, CSA says the travel policy is clear that not all travel expenses may be reimbursed. *Id*. citing Dkt. #81-4.  CSA maintains that Solt cannot point to any overtime premium or travel reimbursement that was not paid when it was properly submitted and approved, and that she has provided no evidence or examples of training that was promised, that she relied upon promises of such training, and that such training was not provided.

In response, Solt claims she can point to specific instances where CSA failed to honor its promises to Solt's detriment, but she fails to cite to evidence in her argument section, requiring the Court to piece together facts stated earlier in briefing.  As with the previous claim of breach of contract, ultimately Solt fails to connect the dots to specific instances of promised overtime, work performed, and a failure to uphold that promise considering that she did receive at least some overtime pay in December 2022 and April 2023.

The Court finds that Solt has failed to identify sufficient evidence to preclude this claim from summary judgment.

## G. Hostile Work Environment

A hostile work environment claim under the Washington Law Against Discrimination ("WLAD") is largely the same as under Title VII.  *Diemert v. City of Seattle*, 689 F. Supp. 3d 956, 962 (W.D. Wash. 2023); *Arthur v. Whitman Cnty.*, 24 F. Supp. 3d 1024, 1033 (E.D. Wash. 2014).  To succeed on a Title VII hostile work environment claim based on sex, a plaintiff must prove the employee was subjected to verbal or physical conduct of a sexual nature, that the conduct was unwelcome, and that the conduct was sufficiently severe or pervasive to alter the terms and conditions of her employment and create an abusive work environment.  *Fried v. Wynn Las Vegas, LLC*, 18 F.4th 643, 647 (9th Cir. 2021).  "[I]t is well established that an employer can create a hostile work environment by failing to take immediate and corrective action in response

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 16

to a coworker's or third party's sexual harassment or racial discrimination the employer knew or should have known about." *Id.* To determine whether an environment is sufficiently hostile or abusive to violate Tile VII, we consider "all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 648 (citing *Christian v. Umpqua Bank*, 984 F.3d 801, 809 (9th Cir. 2020)). "Not every insult or harassing comment will constitute a hostile work environment." *Ray v. Henderson*, 217 F.3d 1234, 1245 (9th Cir. 2000). The standard for judging hostility is meant to "ensure that Title VII does not become a 'general civility code.'" *Faragher v. City of Boca Raton*, 524 U.S. 775, 788, 118 S. Ct. 2275, 141 L. Ed. 2d 662 (1998) (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80, 118 S. Ct. 998, 140 L. Ed. 2d 201 (1998)). The Supreme Court has explained that, properly applied, this standard "will filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing." *Id.* (internal quotation marks omitted). A hostile work environment "must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Id.* at 787.

Solt's opposition brief points to the following facts:

> After joining CSA, Solt's cybersecurity manager's manager, Laura Elan, exposed herself to Solt. Rocke Decl., Ex. 7; Solt Dep. at 92:17-19. Following this incident, Elan called Solt a "prude" during calls with others and in-person. . . Solt Decl. at ¶ 3-4. Elan also referenced "not wearing tights or nylons or . . . pantyhose" to Solt in the presence of others, suggesting that she and Solt go to buy a pair for Elan. Solt Dep. at 98:11-16. Solt repeatedly told Elan that the comments made her uncomfortable, but Elan continued. Solt Dep. at 101:7-12. Sometimes the harassment occurred several times a week, but other weeks Solt was not harassed. Solt Dep. at 105:20-24. CSA understood that Elan's conduct constituted harassment,

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 17

substantiating "certain of Plaintiff's allegations.". *See* Rocke Decl., Ex. 1.

Dkt. #85 at 6. Solt complained to her manager and Elan's employment was terminated in 2020. Solt Dec. at ¶ 7. She was not sexually harassed after Elan's termination. Solt Dep. at 123:3-6. Solt also states that another employee told her that he would need to speak with the technology "guys" because they "actually know about this stuff," and that she was reassigned on multiple occasions to different projects. Dkt. #85 at 6 (citing Solt Decl. at ¶ 8). Further facts are not referenced in argument.

The allegations of harassment in the record do not rise to the level of severe or pervasive conduct sufficient to alter the terms and conditions of her employment. Furthermore, CSA eventually dealt with the situation by terminating the alleged harasser in 2020. The Court agrees with CSA that even if she had an actionable claim for a hostile work environment, it is time-barred. This claim is properly dismissed on summary judgment.

**H. Unlawful Discrimination**

The Amended Complaint fails to discuss this claim beyond mere labels and conclusions. *See* Dkt. #29 at 22 ("CSA America Testing discriminated against Ms. Solt based on sex and age in violation of RCW 49.60.180. Ms. Solt was given different work because of her sex."). She pleads that, "[i]n December 2022, Solt's manager told her she could return home from the Dallas lab because he had found 'two younger and smarter' guys and he was flying them in to work on the ELD projects." *Id*. at 12. In briefing, Solt points to the "younger and smarter" comment, being reassigned multiple times, and "discriminatory comments from a [coworker/supervisor] when he, for example, told Solt that he would need to speak with the technology 'guys' because they 'actually know about this stuff.'" Dkt. #85 at 21. Solt argues that these events resulted in

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 18

"adverse opportunities for work and ultimately informing her termination as a 'poor cultural fit.'"

*Id*.

        On Reply, CSA states:

> Solt's only example of age discrimination is that she was "replaced" in Texas by two "younger and smarter" men. Opp. p. 21. In addition to providing no evidence that anyone made that statement, she ignores the undisputed evidence that she was: 1) offered the chance to go home from Dallas for the holidays; because 2) her supervisor had located two graduate interns to take over and relieve her team; and 3) she suffered no adverse action for volunteering to go home. Fletcher Dec. ¶¶ 24-27.
>
> Likewise, her singular incident of alleged sex discrimination is an innocuous comment from her PTL that he would need to speak to the technology "guys" because they "actually know about this stuff." Opp. p. 21. To call this a stray remark would be straining the concept. "Guys" is a frequently used and often genderless term used to denote a group of persons, plural. Guys, Merriam-Webster.com. 2025. https://www.merriam-webster.com (17 Feb. 2025). Moreover, Solt has cited no evidence that the technology members were not more knowledgeable about the issue (which is not dated or even described) than her. She cites no record evidence of opportunities denied, and her assertion that "these actions did not occur" for her younger, male coworkers is speculation.

Dkt. #115 at 13–14.

        As for Solt's eventual termination, this occurred in February of 2023.  KC Fletcher Dep. 62:8-13.

        Under the WLAD, an employer may not "discharge or bar any person from employment because of age [or] sex" or "discriminate against any person in compensation or in other terms or conditions of employment because of age [or] sex." RCW 49.60.180(2), (3).  In analyzing claims under the WLAD, Washington courts look to federal courts for interpretation and use the *McDonnell Douglas* burden-shifting analysis used to assess Title VII claims. *See Duplessis v. Golden State Foods*, No. C06-5631RJB, at *3, 2007 U.S. Dist. LEXIS 27851 (W.D. Wash. Apr.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 19

16, 2007) (citing *Hill v. BCTI Income Fund-I*, 144 Wn.2d 172, 23 P.3d 440, 445-46 (2001)). The *McDonnell Douglas* analysis has three components. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). First, the plaintiff must present a prima facie case of discrimination. *Id*. at 802. Second, if the plaintiff succeeds in presenting a prima facie case, there is rebuttable presumption of discrimination and the burden of production shifts to the employer to produce a legitimate, nondiscriminatory reason for the adverse employment action. *Robinson v. Pierce Cty.*, 539 F. Supp. 2d 1316, 1326 (W.D. Wash. 2008) (citing *McDonnell Douglas*, 411 U.S. at 802). And third, if the employer presents a legitimate, nondiscriminatory reason for the adverse action, the burden shifts back to the plaintiff to show that the employer's reason is merely pretext for unlawful discrimination. *See McDonnell Douglas*, 411 U.S. at 804.

An employer is entitled to summary judgment if the plaintiff cannot present sufficient evidence to create a genuine issue of material fact that the employer's stated reasons are pretextual. *Robinson*, 539 F. Supp. 2d at 1326. "Summary judgment to an employer is seldom appropriate in the WLAD cases because of the difficulty of proving a discriminatory motivation." *Scrivener v. Clark Coll.*, 181 Wn.2d 439, 334 P.3d 541, 545 (2014). "To overcome summary judgment, a plaintiff only needs to show that a reasonable jury could find that the plaintiff's protected trait was a substantial factor motivating the employer's adverse actions." *Id*. Washington courts describe a plaintiff's burden at this stage as one of "production, not persuasion," which may be proved through direct or circumstantial evidence. *Id*. But where "the plaintiff has produced no evidence from which a reasonable jury could infer that an employer's decision was motivated by an intent to discriminate, summary judgment is entirely proper." *Kuyper v. State*, 79 Wn. App. 732, 904 P.2d 793, 797 (Wash. Ct. App. 1995).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 20

1
2
3
4
5
6
7

Under the above standards, the Court finds that Plaintiff Solt has failed to make a prima facie case of discrimination based on age or sex. Her evidence of being replaced for a work activity and the stray remarks above do not causally relate to an adverse employment action. Assuming Plaintiff could put together a prima facie case, the Court finds that she has failed to present sufficient evidence that CSA's stated reasons for termination or other adverse employment actions were pretextual. This claim will be dismissed on summary judgment.

8

### I.  Retaliation

9
10
11
12
13
14
15
16
17

For Plaintiff to prevail on a claim of retaliation under the WLAD, she must show that 1) she was engaged in a protected activity; 2) that she suffered an adverse employment action; and 3) that there is a causal connection between the protected activity and the employment action. *Elvig v. Calvin Presbyterian Chu*rch, 375 F.3d 951, 965 (9th Cir. 2004); *Lodis v. Corbis Holdings, Inc.*, 292 P.3d 779, 786 (Wn. App. 2013). Under the WLAD, Plaintiff needs to show that her protected activity was a "substantial factor" in the employer's decision to take the adverse employment action. *Allison v. Housing Auth. of City of Seattle*, 821 P.2d 34, 42-43 (1991).

18
19
20
21
22
23
24
25

Solt claims she was fired in retaliation for engaging in protected activity. She points to the 2020 complaint she made about her coworker Elan and argues that "[c]ausation may be inferred based on temporal proximity alone in the context of a retaliation claims." Dkt. #85 at 22 (citing *Ray v. Henderson*, 217 F.3d 1234, 1244 (9th Cir. 2000)). CSA argues she was terminated because CSA was in a "retraction phase," because of "behavior issues and failure to provide timelines for projects," and because her salary "was higher than her peers or supervisor's." Dkt. #71 at 7 (citing, *e.g.*, KC Fletcher Dep. 62:8-13 and at 47:20-23.).

26
27
28

The Court agrees with CSA that the three years that passed between the 2020 complaint about Elan and Solt's February 2023 termination is too long a period to infer causation based on

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 21

temporal proximity.  *See* Dkt. #71 at 23.  Furthermore, during these three years Solt may have received a negative performance review, but she was also promoted and given a raise.  KC Fletcher Dec. at ¶ 3; KC Fletcher Dep. at 181:6-9.  CSA has put forth other reasons for her termination as stated above.  Ultimately, to survive summary judgment Solt needs to make a sufficient showing that her protected activity was a "substantial factor" in the employer's decision, and she fails to do so.  This claim will be dismissed.

Having reviewed the relevant pleadings, the declarations and exhibits attached thereto, and the remainder of the record, the Court hereby finds and ORDERS that Defendant's Motion for Summary Judgment, Dkt. #71, is GRANTED and Plaintiff's claims are DISMISSED. Plaintiff's Motion for Partial Summary Judgment, Dkt. #70, is DENIED given the above rulings. All other pending Motions are STRICKEN as MOOT.  This case is CLOSED.

DATED this 24th day of September, 2025.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 22